901 F.2d 383
 36 Cont.Cas.Fed. (CCH) 75,843
 J.C. DRISKILL, INC., Plaintiff-Appellant,
and
Hicks & Ingle Company of Virginia, Inc., Plaintiff,
v.
James ABDNOR, in his official capacity as Administrator of
the Small Business Administration; Small Business
Administration, Defendants-Appellees,
and
Jerry E. Bradshaw; Steve Nelson, Defendants.
HICKS & INGLE COMPANY OF VIRGINIA, INC., Plaintiff-Appellant,
and
J.C. Driskill, Inc., Plaintiff,
v.
James ABDNOR, in his official capacity as Administrator of
the Small Business Administration; Small Business
Administration, Defendants-Appellees,
and
Jerry E. Bradshaw; Steve Nelson, Defendants.
 Nos. 89-2639, 89-2640.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 6, 1989.
Decided April 17, 1990.
 
 Michael Trevor Zugelder, argued (Robert R. MacMillan, on brief) Breeden, MacMillan & Green, (M.T. Bohannon, Jr., Bohannon, Bohannon & Hancock, on brief), Norfolk, Va., for plaintiffs-appellants.
 Mark Keith Stevens, U.S. Small Business Admin., Washington, D.C., J. Phillip Krajewski, Asst. U.S. Atty., Norfolk, Va. (Stran L. Trout, U.S. Small Business Admin., Richmond, Va., Henry E. Hudson, U.S. Atty., Norfolk, Va., on brief), for defendants-appellees.
 Before WIDENER, CHAPMAN and WILKINSON, Circuit Judges.
 WIDENER, Circuit Judge:
 
 
 1
 Hicks & Ingle Company of Virginia, Inc. (Hicks & Ingle) and J.C. Driskill, Inc. (Driskill) appeal the district court's dismissal of their complaints against the Small Business Administration (the SBA) and its administrator to recover money owed the plaintiffs for work performed on a government construction project. Because the district court correctly concluded that it had no jurisdiction over plaintiffs' claims, we affirm.
 
 I.
 
 2
 In reviewing the district court's dismissal of plaintiffs' actions, we must accept as true all factual allegations contained in the complaints. The original complaint in this case, which Hicks & Ingle filed, alleged the following material facts.
 
 
 3
 On December 31, 1986, the United States Navy named the SBA prime contractor for the construction of the Pay and Personnel Support Office at the Naval Air Station Oceana, Virginia Beach, Virginia. On the same day, pursuant to section 8(a) of the Small Business Act, 15 U.S.C. Sec. 637(a), the SBA entered into a subcontract with Batchelor's Contracting, Inc. (Batchelor's) in the amount of $1,450,339.84.[1] On February 26, 1987, the SBA received what appeared to be valid performance and payment bonds, complete with affidavits of the sureties and certificates of their sufficiency. These documents identified Batchelor's as principal and defendants Jerry Bradshaw and Steve Nelson as the individual sureties.[2] Although the bonds and surety affidavits were signed with the names of Bradshaw and Nelson, Hicks & Ingle questions the authenticity of the signatures. Hicks & Ingle flatly asserts that the signature of Ben Bartlett, the "Vice President/Bank Officer" who certified the sureties' sufficiency, is a forgery.
 
 
 4
 On May 3, 1987, Hicks & Ingle agreed with Batchelor's to accept a sub-subcontractor award from Batchelor's for the purpose of performing $242,800 worth of plumbing, heating, ventilation, and air conditioning work on the project. Hicks & Ingle accepted this award in the belief that the SBA had required Batchelor's to provide valid Miller Act payment and performance bonds with sufficient and authentic individual sureties. Plaintiff began performance of its subcontract and Batchelor's paid plaintiff on time for work performed through September 1987. Batchelor's did not pay Hicks & Ingle, however, for work performed in October, November, and December 1987 and January 1988. Thus, Hicks & Ingle contends that Batchelor's owes it $61,995.81 for work actually performed, plus $22,577.35 in contractual retainage, for a total of $84,573.16. Batchelor's is not a party to this suit because it filed a petition under Chapter 11 of the Bankruptcy Code on September 22, 1987, which petition, however, did not include plaintiffs or this project in its schedules.
 
 
 5
 Plaintiff Driskill is another sub-subcontractor that remains unpaid in the amount of $54,544 for work performed on the project pursuant to a subcontract with Batchelor's. Driskill joined this action by filing an intervening complaint, which also set forth claims against the SBA and its administrator, James Abdnor.[3] Because the intervening complaint tracks the language of Hicks & Ingle's original complaint and sets forth the same theories for relief, we address both complaints together.
 
 II.
 
 6
 Plaintiffs' theory that the SBA and Abdnor are liable for Batchelor's failure to pay is grounded in duties imposed upon the SBA by the Small Business Act, the Miller Act, and relevant Federal Acquisition Regulations. Specifically, plaintiffs allege that defendants breached their legal duty to determine, before awarding the subcontract to Batchelor's, that Batchelor's was capable of performing and completing the subcontract. See 15 U.S.C. Sec. 637(a)(1)(A); 13 C.F.R. Sec. 124.302(c). In addition, plaintiffs contend that defendants were obligated to require Batchelor's to post valid performance and payment bonds and to verify the adequacy of the individual sureties on those bonds, and that defendants failed to do so. See 40 U.S.C. Sec. 270a; 48 C.F.R. Sec. 19.809-1(b)(5); 48 C.F.R. Sec. 28.202-2. In sum, plaintiffs assert that defendants' failure to investigate Batchelor's and the sureties properly, as well as defendants' failure to notify plaintiffs of Batchelor's bankruptcy, "breached [defendants'] statutory, regulatory, and fiduciary duty of care and fair dealings which Defendants ... owed Plaintiff[s]." Accordingly, plaintiffs seek the imposition of an equitable lien against any contract balances in the SBA's possession, as well as a money judgment against the SBA and Abdnor. The district court determined that it had no jurisdiction and dismissed plaintiffs' claims, Hicks & Ingle Co. v. Abdnor, 703 F.Supp. 464, 466 (E.D.Va.1989), and plaintiffs now appeal.
 
 III.
 
 7
 Plaintiffs seek to establish federal question jurisdiction over their claim for an equitable lien based upon 28 U.S.C. Sec. 1331 for jurisdiction and 15 U.S.C. Sec. 634(b)(1) for waiver of sovereign immunity.[4] Under Sec. 634(b)(1) they claim that Congress, by authorizing the administrator to "sue and be sued," waived the sovereign immunity that the SBA otherwise would enjoy as an agency of the federal government. Plaintiffs read section 634(b)(1) as a complete waiver of the SBA's sovereign immunity and rely almost exclusively on the two decisions in Kennedy Electric Co. v. United States Postal Service, 367 F.Supp. 828 (D.Colo.1973), aff'd on other grounds, 508 F.2d 954 (10th Cir.1974), to support the district court's jurisdiction. Plaintiffs' reliance on Kennedy, however, is misplaced.
 
 
 8
 In Kennedy a subcontractor performed work on a post office building but was never paid because the general contractor became insolvent and the Postal Service (then the Post Office Department) had failed to require the posting of Miller Act bonds. The district court in Kennedy imposed an equitable lien in favor of the subcontractor on all undisbursed and wrongfully disbursed contract funds, and the Tenth Circuit affirmed. Thus, on facts somewhat similar to those we consider here, the Tenth Circuit in Kennedy determined that the Postal Service "is just as amenable to the judicial process as is a private enterprise." Kennedy, 508 F.2d at 960. The difficulty with this theory of recovery, however, lies in a critical distinction between the statute waiving sovereign immunity at issue in Kennedy and the one in question here.
 
 
 9
 The statute that regulates the Postal Service, 39 U.S.C. Sec. 401(1), contains a general "sue and be sued" clause that was held to waive the Postal Service's sovereign immunity. The relevant portion of the Small Business Act, 15 U.S.C. Sec. 634(b)(1), uses similar language, but also contains a specific limitation of the waiver:
 
 
 10
 (b) In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator may--
 
 
 11
 (1) sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property.
 
 
 12
 (Emphasis added.) Thus, although the Postal Service statute authorizes all civil legal procedures, including garnishment, General Electric Credit Corp. v. Smith, 565 F.2d 291, 292 (4th Cir.1977), courts have no jurisdiction to award injunctive relief against the SBA. Duncan v. Furrow Auction Co., 564 F.2d 1107, 1109 (4th Cir.1977), cert. denied, 436 U.S. 904, 98 S.Ct. 2232, 56 L.Ed.2d 401 (1978). Congress apparently included this limitation to avoid potential interference with and obstruction of the SBA's operations, Related Industries, Inc. v. United States, 2 Cl.Ct. 517, 522 (1983), and the prohibition extends not only to attachment, injunction, and garnishment, but also to "other similar process." We agree with the district court that section 634(b)(1) precludes the imposition of an equitable lien on any funds belonging to the SBA or Abdnor.
 
 IV.
 
 13
 Finally, we also agree that the district court could not award damages against defendants, based upon plaintiffs' theory of recovery, because plaintiffs failed to comply with the Federal Tort Claims Act (FTCA), 28 U.S.C. Secs. 2671 et seq. A cause of action for breach of a duty imposed by statute or case law, and not by contract, is a tort action. Federal Deposit Insurance Corp. v. Citizens Bank & Trust Co., 592 F.2d 364, 369 (7th Cir.), cert. denied, 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979). Thus, plaintiffs' allegations that defendants breached their "statutory, regulatory, and fiduciary" duties sound in tort.
 
 
 14
 As other circuits have recognized, the express authority in section 634(b)(1) for the SBA to sue and be sued permits an award of damages, but does not supplant the status of the FTCA as the sole avenue of relief for tort claimants against the government and its agencies. See, e.g., Ascot Dinner Theatre v. Small Business Administration, 887 F.2d 1024, 1028 (10th Cir.1989); Taylor v. Administrator of Small Business Administration, 722 F.2d 105, 109 (5th Cir.1983); see also 28 U.S.C. Sec. 2679(a). The district court determined that plaintiffs had not complied with the FTCA, a finding that plaintiffs do not contest on appeal, and the district court properly dismissed the complaints for want of jurisdiction.
 
 
 15
 The judgment of the district court is accordingly
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 Batchelor's was a minority contractor under Section 8(a) of the Small Business Act which authorizes the SBA "to arrange for the performance of ... procurement contracts by negotiating or otherwise letting subcontracts to socially and economically disadvantaged small business concerns...." 15 U.S.C. Sec. 637(a)(1)(C). Other sections of the Act and other statutes authorize the SBA to provide various forms of assistance to section 8(a) firms. See, e.g., 15 U.S.C. Sec. 637(b)(1)(A) (technical and managerial support); 41 U.S.C. Sec. 255(a) (interest-free loans in form of advance payments). Thus, almost by definition section 8(a) subcontractors do not stand on the same financial footing as the ordinary contractor
 
 
 [2]
 Defendants Bradshaw and Nelson never entered an appearance in the district court. Hicks & Ingle obtained a default judgment against Nelson and voluntarily dismissed its suit without prejudice against Bradshaw after learning that Bradshaw apparently is in jail
 
 
 [3]
 Driskill's intervening complaint included no claims against Bradshaw and Nelson. Driskill already had obtained default judgments against them in an earlier suit against Batchelor's and the purported sureties
 
 
 [4]
 Waiver of sovereign immunity is a jurisdictional prerequisite in the nature of, but not the same as, subject matter jurisdiction, in that unless sovereign immunity be waived, there may be no consideration of the subject matter. Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)