SEYMOUR, Circuit Judge.
 

 In order to punish the Internal Revenue Service for the “extraordinarily inept and confusing way [it] handled” this litigation, rec., vol. Ill, at 8, and to compensate the debtors who were its adversaries, the Bankruptcy Court for the District of Colorado imposed two awards of attorney’s fees against the government. It also granted a tax refund to the debtors. Because the judicially-created tradition of sovereign immunity protects the federal government from such awards,
 
 United States v. Nordic Village, Inc.,
 
 — U.S. -, -, 112 S.Ct. 1011, 1017-20, 117 L.Ed.2d 181 (1992) (Stevens, J., dissenting), we must reverse.
 

 I.
 

 Beginning in April 1983, Suzanne and Samuel Graham (Grahams) owned 45% of Glow Electric, Inc., and Samuel’s parents owned the remaining 55%. Suzanne served as secretary-treasurer, and Samuel as vice-president. In February 1987, the Internal Revenue Service alleged that the Grahams were responsible for Glow’s failure to pay taxes withheld from Glow employees, and made assessments against the Grahams to-talling $46,848.43.
 

 The United States Bankruptcy Court for the District of Colorado acquired jurisdiction over the matter when the Grahams filed for bankruptcy under Chapter 7 of the Bankruptcy Code on June 8, 1987. Soon afterwards, the Grahams filed a complaint asking the court to determine their tax liability for all of 1985 and the first two quarters of 1986.
 

 The resulting litigation unfortunately produced a long history of procedural missteps, neglect, and mismanagement, leading to “seventeen months of confusing, relatively useless and wasted time and expenses for both Plaintiffs and Defendant.” Rec., supp. vol. I, at 28. The government twice moved for relief from the automatic stay in order to adjudicate the tax liability of the Grahams and Samuel’s parents. The first time, the government neglected to serve the bankruptcy trustee. The second time, it filed the motion improperly. The government then abandoned its motion to lift the stay but did not file a responsive pleading to the Grahams’ initial complaint. The Grahams moved for an entry of default on April 11, 1988, and the court entered default one week later. On April 19, the government filed both a motion for leave to answer out of time and an answer. When the government then skipped the hearing on that motion, the bankruptcy court denied the motion and entered de
 
 *1138
 
 fault judgment in favor of the Grahams. Following more motions by both parties, the court vacated the default judgment, and it granted $3,788.82 in attorney’s fees to the Grahams. Rec., vol. I, doc. 34.
 

 On November 3, 1988, the government filed a proof of claim against the Grahams in the amount of $86,280.18 for the last quarter of 1986. As the parties proceeded to prepare for a trial on the merits, a dispute emerged regarding the government’s unwillingness to produce certain documents. On March 3, 1989, the court ordered the government to produce the administrative file relating to Glow Electric. When the case was finally called for trial on March 7, however, the government informed the court that the file in question had been destroyed sometime after April 1987.
 
 [1]
 
 After a one-week trial, the court held that the Grahams were not responsible for the tax liability. In addition, it assessed $233.90 in attorney’s fees against the United States for its failure to produce Glow’s administrative file, and held that the Grahams were entitled to a $1,567.32 tax refund.
 
 [2]
 

 The government appealed to the district court both the merits of the bankruptcy court’s decision and the several fee assessments. The district court affirmed, and the government now presses its arguments that the bankruptcy court lacked jurisdiction to order a refund in the absence of a refund claim filed by the .Grahams, and that no waiver of sovereign immunity supported the award of fees against the government.
 

 II.
 

 Refund Claim
 

 The law regarding claims for tax refunds is unusually clear, and does not appear to admit any exceptions: “No suit or proceeding shall be maintained
 
 in any court
 
 for the recovery of any internal revenue tax ... until a claim for refund or credit has been duly filed with the Secretary....” 26 U.S.C. § 7422(a) (emphasis added). More specifically, the bankruptcy court may not determine
 

 any right of the estate to a tax refund, before the earlier of — (i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or (ii) a determination by such governmental unit of such request.
 

 11 U.S.C. § 505(a)(2)(B). Thus, the government does not waive sovereign immunity in a suit for a tax refund until presented with an administrative claim which it has either denied or ignored. The administrative claim itself must be filed within the later of two years after the tax was paid or three years after the return was filed. 26 U.S.C. § 6511(a).
 

 These rules are nonwaivable jurisdictional requirements.
 
 See United States v. Dalm,
 
 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990);
 
 Goulding v. United States,
 
 929 F.2d 329, 331-32 (7th Cir.1991);
 
 Gustin v. United States,
 
 876 F.2d 485, 488 (5th Cir.1989). While the Grahams argue correctly that section 106 of the Bankruptcy Code provides a waiver of sovereign immunity for refund claims under some circumstances, any such general governmental waiver of the right not to be sued does not waive other jurisdictional requirements. The Grahams do not contend that they have filed the requisite administrative claim for a refund. Absent such a filing, the bankruptcy court erred in awarding them a tax refund. Simply put, no claim, no refund.
 

 III.
 

 Attorney’s Fees
 

 As with the refund claim, sovereign immunity is the potential obstacle to an
 
 *1139
 
 award of attorney’s fees against the government.
 
 See Adamson v. Bowen,
 
 855 F.2d 668, 670 (10th Cir.1988) (“[u]nless the United States has waived its sovereign immunity, the government is immune from actions for attorney’s fees”). The bankruptcy court, the district court, and even the government lawyer for this appeal agree that the IRS’s conduct fell short of reasonable expectations. In a standard bankruptcy or tax case, the court would not lack avenues to impose a monetary sanction against a party for frivolous, contemptuous, or vexatious practices. As we discuss below, however, a provision authorizing sanctions does not automatically waive sovereign immunity, and thus does not apply, without more, to fee awards against the government. The Grahams must point to some explicit statutory waiver that will support the bankruptcy court’s award.
 
 See United States v. Mitchell,
 
 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983) (federal government immune from suit unless it expressly consents).
 

 A.
 

 The obvious waiver is located at 26 U.S.C. § 7430, providing that a party who substantially prevails on the merits in a tax case may be entitled to attorney’s fees.
 
 [3]
 
 Under any traditional definition of “prevailing party,” the Grahams’ award would probably be upheld. Section 7430(c)(4), however, defines the party against whom fees may be awarded as one whose litigating position was substantially unjustified.
 
 [4]
 
 In this circuit, the relevant “position” is “the stance taken by the United States in litigation,” specifically, “the arguments relied upon by the government in litigation.”
 
 United States v. Balanced Fin. Management, Inc.,
 
 769 F.2d 1440, 1450-51 & n. 12 (10th Cir.1985);
 
 United States v. 2,116 Boxes of Boned Beef,
 
 726 F.2d 1481, 1487 (10th Cir.),
 
 cert. denied,
 
 469 U.S. 825, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984). In order to be “substantially unjustified,” the. litigation must have been initiated unreasonably, without a reasonable basis in law or in fact.
 
 Balanced Fin. Management,
 
 769 F.2d at 1450-51. Under this definition, not every losing party will have been substantially unjustified in its litigating position
 
 ab initio.
 
 Indeed, the Grahams do not contend that the IRS was substantially unjustified in seeking to determine the tax liability against them. Moreover, the government attorney’s failure to appear at a contempt hearing does not render the underlying litigating position unreasonable for the purpose of a section 7430 award.
 
 See id.
 
 at 1450-51. Regardless of the government’s inexcusably bad conduct during this litigation, section 7430 does not support an award of attorney’s fees here.
 

 The government contends that section 7430 is the
 
 sole waiver
 
 of sovereign immunity in cases to which it applies. Relying on a statement in the legislative history to this effect, the government essentially proposes that it be shielded from any kind of reprimand for its activities in the course of otherwise justified adversary proceedings. Furthermore, the government contends that sanctions can be awarded only in cases in which it not only loses on the merits, but also had no business initiating the litigation. Whether section 7430 is or is not the sole waiver of sovereign immunity for grants of attorney’s fees on the merits of a case, it does not necessarily preclude a separate waiver for intermediate sanctions for procedural missteps.
 

 B.
 

 Some of the authorities advanced by the Grahams and the bankruptcy court to support monetary sanctions against the government are clearly inadequate.
 
 *1140
 
 Bankr. R. 2016,
 
 [5]
 
 only permits awards against the bankruptcy estate and is therefore inapplicable here. While the Grahams are correct that bankruptcy courts have the power to sanction a party for contempt under 11 U.S.C. § 105(a),
 
 [6]
 

 Mountain Am. Credit Union v. Skinner (In re Skinner),
 
 917 F.2d 444 (10th Cir.1990), that general power does not include any express waiver of immunity that would authorize a monetary sanction against the government,
 
 see Barry v. Bowen,
 
 884 F.2d 442 (9th Cir.1989);
 
 but see McBride v. Coleman,
 
 955 F.2d 571, 581-83 (8th Cir.1992) (Lay, J., dissenting). Similarly, 28 U.S.C. § 1927 provides that “[a]ny attorney or other person admitted to conduct cases in any court of the United States ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required ... to satisfy
 
 personally
 
 the excess costs, expenses, and attorneys’ fees reasonably incurred because of such conduct.” (emphasis added). The government contends that the statute, by its language, authorizes only fees against an
 
 attorney. Cf. Braley v. Campbell,
 
 832 F.2d 1504 (10th Cir.1987) (fees imposed against attorney). Even if we were to read the statute as encompassing awards against the
 
 party, see Island Club Marina, Ltd. v. Lee County (In re Island Club Marina, Ltd.),
 
 41 B.R. 359, 361 (Bankr.N.D.Ill.1984), we would still require some independent waiver of sovereign immunity in order to apply it against the United States.
 

 District courts are authorized generally to apply litigation sanctions under the authority of Rule 11 of the Federal Rules of Civil Procedure. The Ninth Circuit has held that the Rules’ stated intention to apply to parties in all civil actions,
 
 see
 
 Fed.R.Civ.P. 1, suffices to waive sovereign immunity for the purpose of Rule 11 monetary awards against the United States. In a case similar to this one, the Ninth Circuit thus refused to be bound by the “prevailing party” limitation for attorney’s fees based on the merits of the litigation, and awarded Rule 11 monetary sanctions for a government attorney’s improper conduct and procedures.
 
 Mattingly v. United States,
 
 939 F.2d 816, 818-19 (9th Cir.1991) (limiting sanction in tax case to section 7430 would “conflict with any rational application of discovery sanctions ... since such sanctions have no relationship whatsoever to whether the party sanctioned eventually wins or loses”);
 
 but see United States v. McPherson,
 
 840 F.2d 244, 246 (4th Cir.1988) (applying Rule 11 in tax cases would defeat specific provisions of section 7430).
 

 Whatever the merits of the argument that sovereign immunity is waived under the Federal Rules of Civil Procedure, the situation is necessarily different in bankruptcy court. Rule 81 states that the rules are not applicable in bankruptcy court, except as they are specifically adopted by the Bankruptcy Rules.
 
 See In re Akros Installations Inc.,
 
 834 F.2d 1526, 1531 (9th Cir.1987). The Bankruptcy Rules have no provision comparable to Rule 1. We can therefore find no waiver of sovereign immunity sufficiently explicit in the Bankruptcy Rules to justify applying the bankruptcy equivalent of Rule 11,
 
 see
 
 Bankr.R. 9011, to award fees against the government.
 
 [7]
 

 C.
 

 The last possible avenue available to the Grahams is 11 U.S.C. § 106, which
 
 *1141
 
 waives sovereign immunity in three categories of cases in bankruptcy.
 
 [8]
 
 The last section, 106(c), provides that “(1) a provision of [the bankruptcy code] that contains ‘creditor/ ‘entity/ or ‘governmental unit’ applies to governmental units; and (2) a determination by the court of an issue arising under such a provision binds governmental units.” The Supreme Court has construed the broad language of this subsection to permit the recovery of only “declaratory and injunctive relief,” and not monetary awards, against governmental entities.
 
 United States v. Nordic Village, Inc.,
 
 — U.S. -, -, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992) (federal sovereign immunity);
 
 see Hoffman v. Connecticut Dep’t of Income Maintenance,
 
 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) (state sovereign immunity);
 
 Small Business Admin. v. Rinehart,
 
 887 F.2d 165,169-70 (8th Cir.1989) (applying
 
 Hoffman
 
 to federal government). Under the Supreme Court’s interpretation, section 106(c) is therefore of no assistance to the Grahams in authorizing the bankruptcy court’s award of attorney’s fees.
 

 Subsection (b) is similarly unhelpful in this case. While the IRS filed the necessary proof of claim,
 
 see Hoffman,
 
 492 U.S. at 101, 109 S.Ct. at 2822, and the subsection does permit monetary awards, it is “a narrow waiver of sovereign immunity, with the amount of the offset limited to the value of the governmental unit’s allowed claim.”
 
 Id.
 
 at 102. In other words, the provision does not allow affirmative recovery, but only a set-off.
 
 United States v. McPeck,
 
 910 F.2d 509 (8th Cir.1990) (where IRS’s claim exceeds debtor’s claim, offset provision applies). In order for a party to recover from the government, the government must also win some part of its suit, because absent some award to the government there is nothing against which to set-off. The merits of this case were decided against the IRS, and it received nothing. Accordingly, subsection (b) does not advance the Grahams’ cause.
 

 Subsection (a), finally, has three requirements: the government must have filed a claim against the estate; the claim against the government must be property of the estate; and the claim against the government must arise from the same transaction or occurrence as the government’s claim. Thus, the government may not claim against the estate without subjecting itself to compulsory counterclaims attaching to its claim. 2 L. King,
 
 Collier on Bankruptcy
 
 § 106.02 (15th ed. 1992). The IRS concedes it has filed a proof of claim, but contends that the fees at issue here arise only out of the course of litigation itself, rather than out of the tax payments which were the subject of the litigation. We agree. Separated in time by several years, and incorporating entirely different facts, these two events cannot be considered the “same transaction or occurrence,” as that phrase would be interpreted under Fed.R.Civ.P. 13(a), or under section 106(a).
 
 Compare In re Lile,
 
 103 B.R. 830, 835 (Bankr.S.D.Tex.1989) (both proof of claim and claim against IRS for improper levy on personal property arise out of same operative facts, namely failure to pay taxes);
 
 In re Price,
 
 103 B.R. 989, 995 (Bankr.N.D.Ill.1989) (same transaction or occurrence underlies proof of claim and claim for violation of automatic stay). The bankruptcy court’s well-intentioned award fails under this subsection as well.
 

 IV.
 

 We can find no waiver of sovereign immunity to support either of the court’s
 
 *1142
 
 awards of attorney’s fees to the Grahams or its refund award. We therefore must reverse. This case makes clear that Congress has yet to enact a waiver of sovereign immunity in a case such as this one so as to hold the government to the same standards imposed on private litigants. Unless Congress enacts- such a waiver, bankruptcy courts will have to find some method other than a monetary sanction against the government itself for disciplining government lawyers who conduct their cases as poorly as this one was conducted.
 

 As an alternative means of discipline, for example, a court may notify the Attorney General, or other appropriate supervisor, of attorney misconduct that would otherwise be subject to sanction. A court may also report misconduct by a government attorney to that attorney’s bar association for the purpose of instituting disciplinary proceedings. We also observe that although a default judgment cannot be entered against the United States as a sanction,
 
 see
 
 Bankr.R. 7055 (applying Fed. R.Civ.P. 55(e), which bars default judgments against the United States absent a showing of right to relief), a bankruptcy court may nonetheless sanction the government in ways that do not run afoul of current sovereign immunity doctrine,
 
 see
 
 Bankr.R. 7037 (applying Fed.R.Civ.P. 37);
 
 see generally
 
 10 C. Wright, A. Miller & M.K. Kane, Federal Practice & Procedure § 2702, at 548-51 (2d ed. 1983). In addition, bankruptcy courts have authority to exercise both civil and criminal contempt powers against recalcitrant government attorneys.
 
 See In re Skinner,
 
 917 F.2d 444 (civil contempt powers); Bankr.R. 9020 (criminal contempt proceedings).
 

 Finally, it is established general law that lawyers can be sanctioned personally under Bankr. R. 9011, the bankruptcy court equivalent to Fed.R.Civ.P. 11.
 
 See, e.g., Taylor v. Freeland & Kronz,
 
 — U.S. -, -, 112 S.Ct. 1644, 1648, 118 L.Ed.2d 280 (1992);
 
 see also In re Excello Press,
 
 967 F.2d 1109 (7th Cir.1992). We see no reason why government attorneys should be exempt from this rule.
 
 Cf EEOC v. Waterfront Comm’n of New York Harbor,
 
 665 F.Supp. 197, 201 (S.D.N.Y.1987) (“government attorneys on notice that they are not exempt from the federal rules and that they will be held to the highest standards of the Bar”).
 

 The judgment of the district court granting a tax refund to debtors and awarding them attorney’s fees as a sanction against the government is REVERSED.
 

 [1]
 

 . The government claims, contrary to the Grahams’ representations, that the IRS agent in charge of the case did not wait for trial to disclose this information, but rather testified during his deposition in February 1989 that the file was destroyed. Since the government discreetly chooses not to challenge the bankruptcy court’s wisdom, but only its jurisdiction, the factual disagreement is not relevant to our consideration of the issues.
 

 [2]
 

 . An additional award against the government of $15,878.59 in attorney’s fees for the entire litigation is not before us.
 

 [3]
 

 . "In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax ... the prevailing party may be awarded a judgment or a settlement for ... reasonable litigation costs incurred in connection with such court proceeding." 26 U.S.C. 7430(a)(2).
 

 [4]
 

 . “The term 'prevailing party’ means any party ... which establishes that the position of the United States in the proceeding was not substantially justified_” 26 U.S.C. 7430(c)(4).
 

 [5]
 

 . The relevant portion of that rule reads, "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement [of expenses or services].” Bankr. R. 2016.
 

 [6]
 

 . The relevant portion of 11 U.S.C. § 105(a) states: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.”
 

 [7]
 

 . In
 
 Adamson v. Bowen,
 
 855 F.2d 668 (10th Cir.1988), we held that the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(b) (1988), expressly waives the federal government's sovereign immunity with respect to fee sanctions imposed against it under Fed.R.Civ.P. 11. We cannot rely on that waiver here, however, because the EAJA expressly states that “[t]he provisions of this section shall not apply to any costs, fees, and other expenses in connection with any proceedings to which section 7430 of the Internal Revenue Code of 1954 applies....” 28 U.S.C. § 2412(e).
 

 [8]
 

 . The text of 11 U.S.C. § 106 reads as follows:
 

 (a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit’s claim arose.
 

 (b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.
 

 (c)Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—
 

 (1) a provision of this title that contains "creditor", "entity", or “governmental unit" applies to governmental units; and
 

 (2) a determination by the court of an issue arising under such a provision binds governmental units. '