

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-6-2002

# In Re:Venture Stores

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-1923

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"In Re:Venture Stores " (2002). *2002 Decisions.* Paper 707.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/707

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 01-1923
_____

IN RE: VENTURE STORES, INC.,

Appellant

_____

On Appeal from the United States District Court
for the District of Delaware[*]
Bankruptcy No. 98-00101 (Chapter 11)
(Honorable Roderick R. McKelvie)

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 12, 2002
Before: SCIRICA and GREENBERG, Circuit Judges, and FULLAM, District Judge[**]

(Filed November 6, 2002)

_____

_____

[*]The United States District Court for the District of Delaware sitting in bankruptcy jurisdiction pursuant to 28 U.S.C. § 1334.

[**]The Honorable John P. Fullam, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

OPINION OF THE COURT

SCIRICA, <u>Circuit</u> <u>Judge</u>.

This appeal arises from a district court order refusing to adjudicate Venture Stores's 11 U.S.C. § 505 claims for a refund of taxes paid to Dallas and Tarrant County (Texas) taxing units. Venture contends it should be permitted to proceed with its claims even though it did not properly request a refund under Texas state law. The District Court held that it lacked jurisdiction because Venture had not properly requested a refund under applicable state law as required by § 505(a)(2)(B) of the Bankruptcy Code. Venture sought reconsideration of that order, which the District Court denied.

We will affirm.

## I.

Debtor Venture Stores filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in January, 1998. Prior to the commencement of Venture's Chapter 11 proceeding, Dallas and Tarrant County taxing units appraised Venture's real and personal property for ad valorem tax purposes for tax year 1995. Although Venture timely paid all of the taxes levied by these taxing units, Venture moved for a determination of its 1995 tax liability during its bankruptcy proceeding under 11 U.S.C. § 505. At no time prior to these § 505 motions–filed in the District Court on or about May 15, 2000–did Venture challenge under state law the valuation of its personal and real property taxes for tax year 1995. In its

Section 505 motions, however, Venture moved for a reassessment of its property, which it contends was overvalued for 1995 tax purposes.

Venture argues that Texas state law has no application requirements for refunds and that a refund should automatically occur upon judicial determination of the market value and corresponding revaluation of tax due. The taxing units, on the other hand, argue that Venture's timely payment of its 1995 taxes and failure to request a refund in compliance with Texas state law deprived the District Court of jurisdiction to provide Venture with a refund.

Thus, the taxing units maintain the District Court properly denied Venture's § 505 motions for determination of its 1995 tax liability. In its order, the District Court found that it lacked jurisdiction under § 505(a)(2)(B) because Venture had not properly requested a refund in accordance with state law. Venture appeals.

## II.

Our review of the order is plenary. See In re Trans World Airlines, Inc., 145 F.3d 124, 131 (3d Cir. 1998). We review legal conclusions de novo and factual findings for clear error. Id.; In re Custom Distribution Services, Inc., 224 F.3d 235, 239 (3d Cir. 2000).

### III.

We have jurisdiction under 28 U.S.C. § 158(d). The District Court, sitting in bankruptcy, had jurisdiction under 28 U.S.C. §157(b)(1), because this was a core proceeding arising under the Bankruptcy Code.

### IV.

At issue is whether a district court, sitting in bankruptcy, has the authority to redetermine a debtor's right to a tax refund under 11 U.S.C. § 505(a)(2)(B) where the refund was not first requested in accordance with state refund procedures. Venture argues that § 505 empowered the District Court to redetermine Venture's 1995 tax liability without being restricted by state law procedural requirements. According to Venture, time limits for requesting a refund under Texas law are inapplicable and are not dispositive of the District Court's jurisdiction to order a refund. The taxing units contend that § 505(a)(2)(B) barred jurisdiction because Venture did not make a proper request for a tax refund under Texas state law. We hold a debtor must properly and timely request a tax refund in accordance with state law governing tax appeals in order for a bankruptcy court to have jurisdiction under § 505(a)(2)(B).

11 U.S.C. § 505(a) of the Bankruptcy Code grants broad jurisdiction to determine the amount or legality of a debtor's tax liability. E.g., In re Custom Distribution Services Inc., 224 F.3d 235, 240-41 (3d Cir. 2000); Quattrone Accountants, Inc. v. I. R.S., 895 F.2d 921, 923 (3d Cir. 1990). Section 505(a) provides:

4

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

This jurisdictional authority, however, is limited by § 505(a)(2)(B). In Re Luongo, 259 F.3d 323, 329 n.4 (5th Cir. 2001) ("Section 505(a)(2)(B), like § 505(a)(2)(A), limits the jurisdictional grant in § 505(a)(1). Section 505(a)(1) grants the bankruptcy court jurisdiction over any tax claim, including refund claims; § 505(a)(2)(B) then prescribes the limits particular to the bankruptcy court's ability to determine a refund."). Section 505(a)(2)(B) provides:

> (2) The court may not so determine–
> (A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title; or
> (B) any right of the estate to a tax refund, before the earlier of–
> > (i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or
> > (ii) a determination by such governmental unit of such request.

Venture argues that the bankruptcy court's jurisdiction to order refunds should not be restricted under § 505(a)(2)(B) because, although that section's legislative history indicates consideration of a jurisdictional limitation, Congress declined to adopt any limiting language in the final version of § 505(a)(2)(B). But we considered and rejected this argument in In re Custom Distribution Services, 224 F.3d 235 (3rd Cir. 2000). In that case, we examined the contours of a federal bankruptcy court's jurisdiction under § 505(a)(2)(B). Reviewing the legislative history of § 505, we concluded that the "properly requests"

5

language in § 505(a)(2)(B) limits a bankruptcy court's jurisdiction to situations in which the debtor has first complied with the relevant taxing authority's procedures for requesting a refund. Id. at 241 (explaining that § 505 made only "stylistic changes" to its precursor, 11 U.S.C. § 2a (2A), a section limiting jurisdiction to the "adjudication of unpaid taxes or of refunds if the debtor was first refused a refund in a non-bankruptcy forum and the applicable appeals period had not expired"). We held, "Section 505(a)(2)(B) prohibits the bankruptcy court from adjudicating the right of an estate to a tax refund unless the trustee has first requested a refund from the government authority administering the tax and was refused." Custom, 224 F.3d at 243 (quoting In re St. John's Nursing Home, Inc., 154 B.R. 117, 120 (Bankr. D. Mass. 1994)).

That holding is consistent with the overwhelming case authority interpreting § 505(a)(2)(B). Id. at 267-68; e.g., In re Cumberland Farms, Inc., 175 B.R. 138 (Bankr. D. Mass. 1994) (holding that § 505(a)(2)(B) must be interpreted to prohibit adjudication by the bankruptcy court of refund claims where the debtor paid the taxes, but did not contest them in accordance with Massachusetts procedure); In re Constable Terminal Corp., 222 B.R. 734, 740 (Bankr. D. N.J. 1998); In re Penking Trust, 196 B.R. 389, 396 (Bankr. E.D. Tenn. 1996); In re EUA Power Corp., 184 B.R. 631, 636 (Bankr. D.N.H. 1995); In re St. John's Nursing Home, Inc., 154 B.R. 117, 120 (Bankr. D. Mass. 1993), aff'd 169 B.R. 795 (D. Mass 1994); In re Graham, 981 F.2d 1135, 1138 (10th Cir. 1992)). Although Custom addressed New Jersey rather than Texas state law, its holding applies here. The District Court properly found–as we found with respect to New Jersey law in Custom–that

6

administrative relief must be pursued before a debtor may obtain a tax refund under Texas law.[1]

Texas Property Tax Code governs ad valorem taxation for that state. <u>In re El Tropicano, Inc.</u>, 128 B.R. 153, 155 n.2 (Bankr. W.D. Tex. 1991). The tax code identifies a comprehensive procedural system through which tax appraisals are to be determined and appealed. <u>Id.</u> Venture failed to request any refund of its 1995 tax payments before it filed Section 505 motions with the District Court in May 2000. Thus, Venture failed to comply with the requirements of Texas's Property Tax Code.[2] Because Venture's tax refund requests

_____

[1] New Jersey and Texas state laws provide for similar systems of appraisal and tax assessment. Namely, refunds are available in both states, but only after the taxpayer goes through the protest process. Demonstratively, N.J.S.A. § 54:3-21 provides, in part:

> A taxpayer feeling aggrieved by the assessed valuation of his property . . . may on or before April 1, or 45 days from the date the bulk mailing of notification of assessment is completed in the taxing district, whichever is later, appeal to the county board of taxation by filing with it a petition of appeal . . . .

Similarly, Texas Property Tax Code §41.41 provides, in part:

> (a) A property owner is entitled to protest before the appraisal review board the following actions: (1) determination of the appraised value of the owner's property or, in the case of land appraised as provided by Subchapter C, D, or E, Chapter 23, determination of its appraised or market value . . . .

And Texas Property Tax Code §41.44 provides, in part:

> (a) Except as provided by Subsections (b) and (c), to be entitled to a hearing and determination of a protest, the property owner initiating the protest must file a written notice of the protest with the appraisal review board having authority to hear the matter protested: (1) before June 1 or not later than the 30th day after the date that notice was delivered to the property owner . . . whichever is later . . . .

[2] In the alternative, Venture contends that it satisfied § 505's refund request requirement through informal settlement letters and associated refund requests it made during pre-filing settlement negotiations. These letters, however, do not conform with Texas state law

(continued...)

7

were not timely under state law, the District Court correctly found that it was without

jurisdiction to order a refund, and Venture's § 505 motions were properly denied.

## V.

For these reasons, the judgment of the District Court will be affirmed.

---

[2](...continued)
procedures for requesting a refund, and do not qualify as proper requests for a refund so as
to eliminate the jurisdictional bar under § 505(a)(2)(B).

TO THE CLERK:

Please file the foregoing opinion.

/s/ Anthony J. Scirica
Circuit Judge

DATED:  November 6, 2002